1
2
3
4
5
6
7      IN THE UNITED STATES DISTRICT COURT FOR THE

8            EASTERN DISTRICT OF CALIFORNIA

9
10   B & H MANUFACTURING          )   CV F 01-6619 AWI LJO
     COMPANY, INC.,               )
                                  )   ORDER REGARDING
11            Plaintiff,          )   PLAINTIFF'S MOTION FOR
     v.                           )   ATTORNEY'S FEES
12                                )
     LYN E. BRIGHT, ByH DE LAS    )
13   AMERICAS, S.A. de C.V., and DOES )
     1 THROUGH 10, inclusive,     )   (Documents  #597 &  #598)
14                                )
              Defendants.         )
15   _____)

16

17                     BACKGROUND

18        In the third amended complaint, filed on February 19, 2003, Plaintiff raised four causes of

19   action: (1) False Designations of Origin and False Descriptions in violation of 15 U.S.C. §

20   1125(a); (2) Dilution in violation of 15 U.S.C. § 1125(c); (3) Infringement of Registered

21   Trademarks in violation of 15 U.S.C. § 1114; and (4) Breach of Fiduciary Duty.   After a jury

22   trial, on October 8, 2004, the jury returned a verdict for Plaintiff.   Pursuant to the verdict form,

23   the jury awarded Plaintiff $145,000.00 for Defendant Bright's breach of fiduciary duty,

24   $501,500.00 for Defendants' trademark infringement, $105,000.00 for Defendants' dilution, and

25   $100,000.00 for Defendants' trade dress infringement, for a total damage award of $851,500.00

26   On February 17, 2005, the court denied Plaintiff's request for additional monetary relief pursuant

27   to 15 U.S.C. § 1117(a) and 15 U.S.C. § 1117(b).  Pending before the court is Plaintiff's motion

28   for attorney's fees

**DISCUSSION**

Pursuant to the Lanham Act, attorney's fees are available in some trademark cases.   Title 15 U.S.C. § 1117(a) provides that "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C § 1117 (a).    A trademark case is exceptional within the meaning of Section 1117(a) "where the district court finds that the defendant acted maliciously, fraudulently, deliberately, or willfully." Earthquake Sound Corp. v. Bumper Industries, 352 F.3d 1210, 1216 (9th Cir. 2003).    In finding the case in Earthquake was exceptional, the Ninth Circuit noted that (1) it was not a particularly close case on the question of infringement; (2) the defendant took steps to deceive consumers; (3) there was actual confusion; (4) the defendant ignored the Plaintiff's notifications regarding infringement; and (5) the defendant refused to reach a settlement with the plaintiff and persisted in marketing its infringing lines.   Id. at 1217-18.   Attorney's fee awards have been upheld where the defendant continued to engage in infringing conduct knowing its conduct wrongful. See Committee for Idaho's High Desert, Inc. v. Yost, 92 F.3d 814, 825 (9th Cir. 1996) (attorney's fees awarded on appeal where defendant knowingly and intentionally infringed in order to cause confusion and interfere with plaintiff's environmental agenda); Transgo, Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001, 1027 (9th Cir. 1985) (affirming award of attorney's fees where plaintiff was successful in prevailing over defendant on most claims and record contained substantial evidence of deliberate infringement, including continued infringement in violation of injunction); Sealy, Inc. v. Easy Living, Inc., 743 F.2d 1378, 1384 (9th Cir. 1984) (affirming entitlement to attorney's fees where record contained evidence of intent to deceive consumers); But see  Lindy Pen Co., Inc. v. Bic Pen Corp., 982 F.2d 1400, 1409-10 (9th Cir. 1993) (affirming district court's denial of attorney's fees where infringement was not intentional and nothing else made case exceptional).

Based on this line of cases, the court previously found Plaintiff entitled to attorney's fees in this action.   The jury found that Defendants intentionally used Plaintiff's trademarks, trade names, service marks, and trade dress knowing it was an infringement.    The evidence admitted

2

1   at trial showed that Defendants used Plaintiff's marks and trade dress knowing they belonged to

2   Plaintiff and that Defendants did not have Plaintiff's permission to use the marks and trade dress.

3    Defendants' actions can only be described as intentional and willful.  The evidence showed that

4   Defendants' actions caused confusion in the relevant market.  While Defendant Bright has

5   maintained that his infringing conduct was only done because he believed Defendant ByH

6   Mexico and Plaintiff B&H would one day reestablish their relationship, Defendant Bright still

7   knew he was infringing and after several months should have realized the relationship was

8   unsalvageable.   Thus, under the Ninth Circuit's standard, attorney's fees are appropriate.   The

9   issue before the court in the pending motion is the amount the court should award in attorney's

10  fees.

11

12  **A.  LODESTAR AMOUNT OF ATTORNEY'S FEES**

13          The Ninth Circuit has stated that the district court should use the lodestar method to

14  establish reasonable attorney's fees when attorney's fees are available by statute.  <u>Cairns v.</u>

15  <u>Franklin Mint Co.</u>, 292 F.3d 1139, 1157 (9th Cir. 2002).  The lodestar method determines the

16  amount of a reasonable fee by multiplying the number of hours reasonably expended on the

17  litigation by a reasonable hourly rate." <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983).   In

18  calculating the lodestar amount there are two critical questions: (1) Whether a reasonable hourly

19  rate has been charged and (2) Whether the amount of time spent on the case was reasonably

20  necessary.

21          Plaintiff requests a total of $1,407,584.50 in attorney fees and expenses.   Defendants

22  request that the court award Plaintiff no more than $131,549.50 in attorney's fees and award no

23  expenses.   The primary dispute between the parties is over what are reasonable hours for specific

24  tasks and what expenses should be included in attorney's fees.

25  **1. Reasonably Hourly Rate**

26          The reasonable hourly rate corresponds to the prevailing market rate in the relevant

27

28                                                    3

community, considering the experience, skill, and reputation of the attorney in question.

Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210 (9th Cir. 1985).   The community where

the court sits is the relevant market for determining reasonable fees.   Gates v. Deukmejian, 987

F.2d 1392, 1405 (9th Cir. 1992).

Plaintiff asks for between $100 and $275 an hour to compensate Plaintiff's attorneys and

paralegals.   Plaintiff has provided evidence that the hourly rates claimed by Plaintiff's attorneys

and paralegals is their normal hourly rate.   Plaintiff also presents evidence of rates charged by

other attorneys in this legal community.   Defendants do not object to Plaintiff's attorneys' and

paralegal's hourly rates.   Based on this court's own knowledge of legal rates, the court agrees

that Plaintiff's attorneys' and paralegals' hourly rates are reasonable.   Thus, the court finds the

hourly rates requested by Plaintiff reasonable.

**2. Time Spent**

Preliminarily, the court notes that when addressing the hours spent on this action, the

parties discuss total dollar amounts for tasks rather than hours.   Normally, the court addresses

the time attorneys spend on projects in terms of hours.   Once the hours are established, the court

multiplies the hours by the reasonable hourly rate.   However, in this case, the hourly rates are

not disputed.   In presenting their evidence, Plaintiff tallied each task in terms of total cost,

including the time spent by different people making different hourly rates.   Defendants similarly

addressed Plaintiff's evidence in terms of the cost for each task and not the hours spent.   Based

on the way the parties' approached the evidence and the fact the hourly rates are not disputed, the

court will address the attorney's fees claimed in terms of total costs, rather than hours.

Defendants contend that the hours Plaintiff's attorneys spent on some tasks were not

reasonable.   In determining the original lodestar figure, "[t]he district court . . . should exclude

from this initial calculation hours that were not 'reasonably expended.'  Cases may be

overstaffed, and the skill and experience of lawyers vary widely."   Hensley, 461 U.S. at 434.

Furthermore, the Supreme Court has held as follows:

4

> Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. 'In the private sector, "billing judgment" is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's <u>adversary</u> pursuant to statutory authority.'

<u>Hensley</u>, 461 U.S. at 434. The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked. <u>Id</u> at 433, 437. The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits. <u>Blum v. Stenson</u>, 465 U.S. 886, 892 n.5 (1984); <u>Toussaint v. McCarthy</u>, 826 F.2d 901, 904 (9th Cir. 1987). To demonstrate that the amount of time spent on the case was reasonable, the party must present more than simple records demonstrating the time actually spent on the case. <u>Sealy, Inc. v. Easy Living, Inc.</u>, 743 F.2d 1378, (9th Cir. 1984).

With these standards in mind, the court has reviewed Plaintiff's claimed attorney's fees for various tasks, Plaintiff's supporting evidence, and Defendants' objections. The court has complied a list of reasonable fees for Plaintiff's attorneys' tasks in Subsection (f) and Subsection (g). In the following subsections, the court explains its reasoning in awarding the specific amounts listed in Subsection (f) and Subsection (g).

### a. Reduction of Hours for Non-Lanham Act Claims

Defendants contend that Plaintiff's attorneys fees should be reduced because Plaintiff claims hours for time spent litigating the breach of fiduciary duty claim. Defendants argue that Plaintiff's attorneys fees should be apportioned to cover only the Lanham Act claims. Plaintiff contends apportionment is not required because the claims arose out of a common core of operative facts.

Attorney's fees are recoverable only for work performed in connection with Lanham Act claims. <u>Gracie v. Gracie</u>, 217 F.3d 1060, 1069 (9th Cir. 2000). When awarding reasonable

attorney fees pursuant to the Lanham Act, a party cannot recover legal fees incurred in litigating non-Lanham Act claims unless the Lanham Act claims and non-Lanham Act claims are so intertwined that it would be ***impossible*** to differentiate between the work done on the claims.   Id. In a case containing both Lanham Act and non-Lanham Act claims, an allocation or apportionment is necessary.   Id. at 1069-70.   The Supreme Court has observed that where the plaintiff's claims involve a "common core of facts" or are based on "related legal theories," it is "difficult to divide the hours expended on a claim-by-claim basis."  Hensley, 461 U.S. at 435. The Ninth Circuit has cautioned, however, that the impossibility of making an exact apportionment between Lanham Act claims and non-Lanham Act claims does not relieve the court of its duty to make some attempt to adjust the fee award in an effort to reflect an apportionment.  Cairns v. Franklin Mint Co., 292 F.3d 1139, 1157-58 (9th Cir. 2002); Gracie, 217 F.3d at 1069-70.   Reducing a total attorney fee amount by a percentage that represents work on non-recoverable non-Lanham Act claims is one method courts have used to apportion attorney's fees.  Cairns, 292 F.3d at 1158.

In this case the court finds exact apportionment is not possible.   Different "acts" by Defendants serve as the basis for the Lanham Act claims and breach of fiduciary duty claim. But, to some extent, the basis of the claims and facts supporting the claims overlap.   Some of the same evidence was necessary to support all claims.   The parties may not have realized the significance of discovery to particular claims until it had been obtained and reviewed.   Some motions would have been brought regardless of the presence of the breach of fiduciary duty claim.   Plaintiff did not maintain its records in a manner that considered what time was spent on which claims.   Thus, the court finds that it would be impossible to determine the exact amount of time spent on each claim at this time.

However, the Ninth Circuit has cautioned against awarding attorney's fees for time not spent on Lanham Act claims simply because it is difficult or even impossible to make an exact apportionment of time.

6

> We hold, however, that the impossibility of making an exact apportionment does not relieve the district court of its duty to make some attempt to adjust the fee award in an effort to reflect an apportionment. In other words, apportionment or an attempt at apportionment is required unless the court finds the claims are so inextricably intertwined that even an estimated adjustment would be meaningless.

Gracie, 217 F.3d at 1070.   Here, the court does not find that the claims are so inextricably intertwined that an estimated adjustment would be meaningless.   Defendants suggest that 50% of Plaintiff's attorney's time was spent on tasks that assisted the Lanham Act claims.   Plaintiff has not attempted to apportion the time spent on various tasks.

There were four claims in this action; Three were brought under the Lanham Act and one was brought under California law and alleged breach of fiduciary duty.   The Lanham Act claims targeted discrete conduct by Defendants and concerned whether Defendants' copied and diluted Plaintiff's marks and trade dress.   The breach of fiduciary duty claim alleged broad improper conduct by Defendant Bright.   The breach of fiduciary duty claim contained numerous different acts by Defendant Bright.   The breach of fiduciary duty claim included many legal theories, including, among others, that Defendant Bright impermissibly competed with Plaintiff, Defendant Bright usurped corporate opportunities belonging to Plaintiff, Defendant Bright used Plaintiff's confidential information for his own purposes, Defendant Bright failed to protect Plaintiff's interests, and Defendant Bright disclosed confidential information.   The breach of fiduciary duty claim added significant complexity to this action.   The breach of fiduciary duty claim required the parties and the court to address issues of the parties' history and surrounding events that would not have been addressed had the breach of fiduciary duty claim not been raised. Plaintiff also asked for punitive damages in connection with their breach of fiduciary duty claim. Finally, the breach of fiduciary duty claim concerned acts starting in as early as 2000 and lasting until the present, less time than the Lanham Act claims.

Based on the complexity of the breach of fiduciary duty claim and without Plaintiff providing another way to apportion Plaintiff's attorneys' time, the court finds that, in general, 50% of Plaintiff's attorneys' time was spent on the breach of fiduciary duty claim.   The court

1   recognizes that for certain tasks, Plaintiff's attorneys would have spent the time regardless of the

2   presence of the breach of fiduciary duty claim.   Other tasks were necessary for the Lanham Act

3   claims.  In those instances, the court has given Plaintiff 100% of the attorney's fees claimed.   In

4   other circumstances, the court finds that for specific tasks and motions Plaintiff's attorneys spent

5   more or less than 50% of their time on Lanham Act claims.  When possible, the court has

6   reviewed the relevant motion and pleading and determined the percentage of the motion or

7   pleading that should be attributed to the Lanham Act claims.   For example, a review of the

8   motions in limine reveals that a 50% apportionment is not appropriate.  In the motions in limine,

9   approximately 3/4 of the work done on Defendants' motions was addressed to the Lanham Act

10  claim and/or would have been done regardless of the presence of the breach of fiduciary duty

11  claim.   However, only 1/3 of the time spent on Plaintiff's motions in limine addressed the

12  Lanham Act claims.   The court has indicated the specific tasks and the percentage of time the

13  court finds is reasonable to attribute to the Lanham Act claims in Subsection (f) and Subsection

14  (g).

15  ***b.  Excessive Time***

16          Defendants object to some of the hours spent by Plaintiff's attorneys as excessive.   The

17  number of hours compensated should exclude hours that were not reasonably expended on the

18  litigation, or that are "excessive, redundant, or otherwise unnecessary."  <u>Van Gerwen v.</u>

19  <u>Guarantee Mut. Life Co.</u>, 214 F.3d 1041, 1045 (9th Cir.2000) (internal quotation marks omitted).

20  Cases may be overstaffed and hours duplicated. <u>Hensley</u>, 461 U.S. at 434.   While reasonable

21  hours may include time spent by more than one attorney on a particular issue or task, if there is

22  duplication of effort, the court may reduce the total hours claimed.  <u>Davis v. City & County of</u>

23  <u>San Francisco</u>, 976 F.2d 1536, 1544 (9th Cir. 1992).

24          The hours the court deems excessive are listed in Subsection (f) below.   In summary, the

25  court finds most hours claimed by Plaintiff's attorneys reasonable based on the court's review of

26  the task and/or Defendants' failure to oppose the time claimed as excessive.  However, the court

27

28                                                  8

finds that some of the time claimed for certain tasks excessive.    In many instances the court was

also required to research and review the same issues briefed by Plaintiff's attorneys, and the court

takes the time it spent to research and resolve issues into account in awarding reasonable fees.

While Plaintiff was required to meet its burden at each stage of litigation and Defendants and

Defendants' attorneys vigorously litigated each stage,[1] Plaintiff's attorneys in some instances

spent more time on tasks than the court considers reasonable.    The court also finds that

Plaintiff's briefs were often not concise.    In addition, Plaintiff spent considerable time in its

briefs unnecessarily complaining about Defendant Bright's conduct giving rise to this litigation

and Defendants' attorney's conduct during the litigation.    For example, 12 of the 25 pages in

Plaintiff's motion for attorney's fees rehash Defendant Bright's improper conduct and the

litigation history already well known to this court.    Only beginning on page 13 does the brief

turn to issues of relevance to the pending motion for attorney's fees.    With these general

statements in mind, the court makes the following additional comments on some activities for

which the court found the claimed hours excessive.

    The court finds the time claimed for the oppositions to the fourth and fifth motions to

dismiss excessive.    Plaintiff was only required to file oppositions, in which they only needed to

responded to Defendants' arguments and did not need to "anticipate" Defendants' possible

arguments.    While some of the issues raised by Defendants were complex, the court researched

and reviewed the same issues and finds Plaintiff's attorneys simply spent too much time on legal

research and writing.    The court finds that these motions raised difficult and close, albeit

ultimately unsuccessful, arguments.    However, the court notes that Plaintiff maintains that these

motions were frivolous, delaying tactics.    Plaintiff's attorneys spent an inordinate amount of

time on motions Plaintiff believes were without any merit.    The court has awarded Plaintiff the

---

[1] In making this statement, the court does not find that Defendants or their attorneys acted improperly or in bad faith, other than on those occasions for which Defendants have already been sanctioned.   Rather, the court finds that both sides litigated their positions throughly.   Each side required the other to do everything legally required of them under the law, and few stipulations, compromises, and informal resolutions were utilized by the parties.

hours the court believes were warranted to file meaningful oppositions.

The court also finds the hours spent on the pretrial statement and preparation of evidence for trial excessive.   The court recognizes that Plaintiff had significant evidence to compile, the facts giving rise to this action were lengthy, and the claims by their nature were complex. However, the court believes 100 attorney hours and 100 paralegal hours on document compilation, along with some additional hours for document preparation, sufficient.   While the pretrial statement was a large undertaking given the nature of this case and was required by Local Rules to contain substantial information, ultimately this document proved of minimal use to the court.   Finally, given the number of exhibits actually entered into evidence and used at trial, the court finds 120 hours to prepare trial exhibits sufficient.    Thus the court will reduce the hours for the preparation of the pretrial statement and trial exhibits.

The court also finds that the hours claimed for post-trial motions regarding injunctive relief, treble damages, and the presence of a counterfeiting claim excessive.   The court also researched these issues.    The court recognizes that the injunctive relief issue and treble damage issue were not trivial matters to Plaintiff.   However, the huge amount of hours claimed by both Ms. Ribman and Mr. Fairbrook simply cannot be authorized by the court.   Thus, the hours in subsection (f) have been reduced.

### *c.  Travel*

Plaintiff asks that its attorneys be awarded attorney's fees for their time spent traveling in connection with this action.   Defendants object to Plaintiff's attorneys being paid for travel time. Travel time to attend meetings, depositions, and court may be recovered **if** local attorneys in private practice customarily bill their clients for this time.   Davis v. City & County of San Francisco, 976 F.2d 1536, 1543 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993); Chalmers v. Los Angeles, 796 F.2d 1205, 1216 (9th Cir. 1986).

The court has reviewed Plaintiff's briefs and declarations.    The court found no evidence that local attorneys in private practice in the Fresno Division of the Eastern District of California

customarily bill their clients for travel time.[2]    In the court's experience, attorneys in private

practice bill clients for travel time in a variety of ways, including billing at regular rates, billing at

reduced rates, billing for a portion of travel time, and not billing clients at all.    Plaintiff bears

the burden of showing that it is entitled to the claimed hours.   See Hensley, 461 U.S. at 434.

The court will disallow any hours claimed for travel time based on Plaintiff's failure to provide

evidence that local attorneys in private practice bill their clients for travel time at their regular

rates.

### *d.   Issues Concerning Urban*

Plaintiff's attorneys spent considerable time litigating issues concerning Dianna Urban's

testimony.   Defendants contend that no time should be awarded for work done concerning Ms.

Urban because she would have provided evidence as to only the breach of fiduciary duty claim.

Because Ms. Urban invoked her Fifth Amendment privilege and refused to testify, it is

difficult to know just which claims her testimony may have benefitted.   However, the court finds

that Ms. Urban was suspected to have information regarding both the Lanham Act claims and

breach of fiduciary duty claim.   Ms. Urban invoked her privilege and refused to testify regarding

a laptop that may have contained Plaintiff's trademarks.   Ms. Urban refused to testify regarding

her involvement in running Defendant ByH Mexico.   Ms. Urban refused to testify regarding her

knowledge of the development and manufacture of Defendants' machines.   The court

recognizes that it is difficult to ascertain the helpfulness of Ms. Urban's testimony because Ms.

Urban invoked her Fifth Amendment privilege.   However, given the types of information Ms.

Urban may have had knowledge of, the court cannot find that Ms. Urban could have provided no

---

[2]   The court notes that a large amount of documents were filed in support of Plaintiff's motion.   If Plaintiff has provided this evidence and the court overlooked it, Plaintiff should note the evidence in a motion for reconsideration.   The court further notes that if Plaintiff files any motion for reconsideration, a motion for reconsideration is not available to raise legal theories and provide evidence that could have been, but were not, presented to the court before the court issued the order from which reconsideration is sought. In re Agric. Research & Tech. Group, Inc., 916 F.2d 528, 542 (9th Cir.1990);  Bally Export Corp. v. Balicar, Ltd., 804 F.2d 398, 404 (7th Cir.1986).

1   benefit to the Lanham Act claims.   As such, the court finds approximately 50% of the claimed

2   hours concerning Ms. Urban should be apportioned to the Lanham Act claims.

3       The court does find that some of the hours spent working on motions concerning Ms.

4   Urban's testimony were excessive.   These excessive hours have been reduced in Subsection (f).

5   *e.  Attorneys Fees Awarded as Sanctions*

6   _____Plaintiff requests $34,285.00 in attorney's fees for motions to compel Plaintiff was

7   required to file in Spring 2003 because Defendants failed to provide discovery responses.   In

8   their opposition, Defendants contend that the court should not award any of the requested

9   $34,285.00 because Magistrate Judge Lawrence J. O'Neill already awarded Plaintiff attorney's

10  fees regarding these motions.   Plaintiff has not specifically responded to this argument.

11      The court has reviewed the record.   In Spring 2003, Plaintiffs filed motions to compel.

12  As a sanction, Judge O'Neill awarded Plaintiff some of the attorney's fees Plaintiff sought

13  concerning these motions.   The court finds Judge O'Neill's orders were designed to compensate

14  Plaintiff for Plaintiff's attorneys' time in preparing the motions.   Thus, no further attorney's fees

15  will be awarded regarding these motions.

16  *f.  Calculation of Attorney's Fees for Specific Tasks*

17      Plaintiff requests attorney's fees for specific tasks done in preparation for this case.

18  Exhibit A to the declaration of John D. Fairbrook contains a list of tasks performed by Plaintiff's

19  attorneys.   Exhibit A contains a brief description of the task, the hours utilized, and the person

20  who worked on the task.   Plaintiff has provided monthly billing records in support of Exhibit A.

21  Defendants have responded to these claimed amounts in Exhibit A to the declaration of Todd N.

22  Noonan.   The court has reviewed the exhibits and briefs and finds the following amounts

23  reasonable for the given tasks.

24  //

28                                         12

| Task | Reason for Adjustment | Amount |
|------|----------------------|--------|
| Original Complaint | 2/4 of Claims Lanham Act | $ 642.00 |
| First Amended Complaint | 2/4 of Claims Lanham Act | $ 682.75 |
| Opp. First MTD | 1/4 of Motion on Service<br>1/4 Forum Selection Clause - Lanham Act | $ 4,011.50 |
| Opp. Second MTD | Directed To All Claims | $ 16,869.00 |
| Second Amended Complaint | 2/3 of Claims Lanham Act | $ 4,492.00 |
| Opp. To Third MTD | ½ of Motion Regarding Fiduciary Duty<br>½ of Motion Directed to ByH California | $ 1,792.00 |
| Motion App. Process Server | Necessary Regardless of Other Claims | $ 688.00 |
| Joint Status Report | Undisputed<br>Necessary Regardless of Other Claims | $ 1,378.00 |
| Third Amended Complaint | 3/4 of Claims Lanham Act | $ 1,845.00 |
| Discovery Requests | Estimated 50% Lanham Act | $ 1,029.00 |
| Status Conference | Undisputed<br>Necessary Regardless of Other Claims | $ 156.00 |
| D's Discovery, Production No. 1 | Estimated 50% Lanham Act | $ 2,726.00 |
| D's Discovery, Interrogatories No. 1 | Estimated 50% Lanham Act | $ 5,824.00 |
| Stipulated protective Order | Undisputed<br>Necessary Regardless of Other Claims | $ 3,333.00 |
| Discovery Spring 2003 | Already Awarded | $ 0.00 |
| D's Motion for Reconsideration | Undisputed<br>Necessary Regardless of Other Claims | $ 4,008.50 |
| Deposition Subpoenas | Estimated 50% Lanham Act | $ 2,838.50 |
| Further CMC | Undisputed<br>Necessary Regardless of Other Claims | $ 416.00 |
| Discovery on Eider Prop. | Primarily for Breach of Fiduciary Duty | $ 0.00 |
| Hague Evidence Convention | Undisputed<br>Necessary Regardless of Other Claims | $ 6,247.00 |
| Plaintiff's Discovery Requests | Estimated 50% Lanham Act<br>RFA, No 2 All Lanham Act | $ 3,522.50<br>$ 817.00 |

13

| | | | |
|---|---|---|---:|
| 1 | Notice of Deposition | Estimated 50% Lanham Act | $ 99.75 |
| 2 | Depositions | Estimated 50% Lanham Act | $ 37,711.00 |
| 3 | D's Discovery, Production 1-2 | Estimated 50% Lanham Act | $ 10,481.50 |
| 4 | Contempt Eider | Primarily for Breach of Fiduciary Duty | $ 0.00 |
| 5 | Meet and Confer, Production 1-2 | Estimated 50% Lanham Act | $ 2,583.00 |
| 6 | D's Discovery, Production 3 | Estimated 50% Lanham Act | $ 48.00 |
| 7 | Meet and Confer, Interrogatories 1 | Estimated 50% Lanham Act | $ 1,999.00 |
| 8 | D's Discovery, Interrogations 1 | Estimated 50% Lanham Act | $ 423.00 |
| 9 | D's Motion to Compel | Estimated 50% Lanham Act | $ 17,286.75 |
| 10 | D's Discovery, Admissions 1-3 | Undisputed | $ 1,814.50 |
| 11 | D's Discovery, Production 4 | Undisputed | $ 10,249.00 |
| 12 | Reconsideration Compel | Undisputed | $ 8,122.00 |
| 13 | D's Discovery, Production 5 | Primarily for Breach of Fiduciary Duty | $ 0.00 |
| 14 | Meet and Confer, Production 1 | Estimated 50% Lanham Act | $ 76.00 |
| 15 | D's Discovery, Interrogatories 1 | Estimated 50% Lanham Act | $ 1,452.25 |
| 16 | Expert Disclosures | Necessary Regardless of Other Claims | $ 4,341.00 |
| 17 | Motion Enforce Subpoena, Urban | Estimated 50% Lanham Act | $ 1,995.00 |
| 18 | D's Discovery, Interrogatories 2 | Estimated 50% Lanham Act | $ 2,524.25 |
| 19 20 | Opposition Fifth MTD - Join Bright Tec. | Necessary Regardless of Other Claims Excessive Hours EMR - 45 Hours ($8,550) | $ 13,297.00 |
| 21 | Opposition Fourth MTD - Exterritorial Jurisdiction | Necessary Regardless of Other Claims Excessive Hours EMR, 45 Hours ($8,550) | $ 14,727.00 |
| 22 | D's Discovery Subpoenas | Necessary Regardless of Other Claims | $ 2,686.00 |
| 23 | P's Subpoenas | Necessary Regardless of Other Claims | $ 360.00 |
| 24 | Protective Order | Estimated 50% Lanham Act | $ 3,428.00 |
| 25 | Ex Parte Application | Estimated 50% Lanham Act | $ 2,990.25 |
| 26 | D's Discovery, Production 6 | Relates to Other Claims | $ 0.00 |
| 27 | | | |
| 28 | 14 | | |

| | | | |
|---|---|---|---|
| D's Discovery, Production 7 | Undisputed as Necessary | $ | 456.00 |
| Motions on Urban | Estimate 50% Lanham Act (.5 x $ 26,587)<br>Excessive Hours EMR, 80 Hours ($15,200) | $ | 13,293.50 |
| Stip. on Punitive Discovery | Relates to Other Claims (Punitive) | $ | 0.00 |
| D's Discovery, Interrogatories 1 | Unnecessary - Responses Withdrawn | $ | 0.00 |
| Joint Pretrial Statement | Estimate 50% Lanham Act (.5 x $39,498)<br>Excessive Hours EMR,50 Hours ($9,500)<br>Excessive Hours JDF,50 Hours ($13,750)<br>Excessive Hours DMK,100 Hours ($12,000) | $ | 19,749.00 |
| Videoconferencing | Undisputed as Necessary to Lanham Act | $ | 454.00 |
| D's Motion to Continue Trial | Estimated 50% Lanham Act | $ | 6,214.00 |
| Motion to Designate Documents<br>as Limited Access | Undisputed as Necessary to Lanham Act<br>Excessive Hours EMR, 50 Hours ($9,500) | $ | 10,380.00 |
| P's Motion to Compel | Relates to Other Claims (Punitive) | $ | 0.00 |
| Motion for Release Records | Undisputed as Necessary to Lanham Act | $ | 5,593.00 |
| Supplemental Pretrial Statement | Estimated 50% Lanham Act | $ | 8,753.50 |
| Preparation Trial Exhibits | Estimated 50% Lanham Act (.5 x $14,400)<br>Excessive Hours DMK,120 Hours ($14,400) | $ | 7,200.00 |
| P's Motions in Limine | Estimated 1/3 Time Lanham Act<br>Or Necessary Regardless of Other Claims | $ | 12,969.33 |
| D's Motions in Limine | Estimated 3/4 Time Lanham Act<br>Or Necessary Regardless of Other Claims | $ | 36,057.00 |
| P's Reply Motions in Limine | Estimated 1/3 Time Lanham Act<br>Or Necessary Regardless of Other Claims | $ | 4,709.00 |
| Jury Instructions, Voir Dire<br>Special Verdict | Estimated 3/4 Time Lanham Act<br>"Or Necessary Regardless of Claims | $ | 16,506.00 |
| Trial Brief | Estimated 50% Lanham Act | $ | 3,586.72 |
| Brief on O'Donnell Documents | Undisputed as Necessary to Lanham Act | $ | 9,667.50 |
| Trial Subpoenas | Estimated 50% Lanham Act | $ | 234.00 |
| Hearing on Motion in Limine | Estimated 50% on Each Party's Motions<br>D's Motions ($7,529 x 3/4 = $5,646.75)<br>P's Motions ($7,529 x 1/3 = $2,510.00) | $ | 8,156.75 |

| | | | |
|---|---|---|---|
| Supp. Brief Breach of Duties | Unnecessary to Lanham Act | $ | 0.00 |
| Motion to Continue Trial 2 | Necessary Regardless of Other Claims | $ | 1,653.00 |
| Trial Prep. | Estimated 50% Lanham Act | $ | 8,800.75 |
| Joint Summary | Estimated 50% Lanham Act | $ | 330.00 |
| Travel | Estimated 50% Lanham Act | $ | 7,777.50 |
| Trial - Court Proceedings | Estimated 50% Lanham Act | $ | 35,940.00 |
| Trial - Preparation | Estimated 50% Lanham Act | $ | 44,320.75 |
| Trial - Motions | Estimated 50% Lanham Act | $ | 6,004.00 |
| Trial - Injunctive Relief / Treble Damages | Estimated 80% Lanham Act (.8 x 36,369.50) Excessive Hours EMR, 100 Hours ($19,000) Excessive Hours JDF, 50 Hours ($13,750) | $ | 29,095.60 |
| Motion to Strike | Estimated 80% Lanham Act | $ | 760.00 |
| Counterfeiting Claim | Necessary To Lanham Act | $ | 1,581.00 |
| Cost Bill | Estimated 50% Lanham Act (.5 x $11,795) Excessive Hours DMK, 50 Hours ($6,000) Excessive Hours EMR, 25 Hours ($4,750) | $ | 5,897.50 |
| Motion for New Trial | Unnecessary | $ | 0.00 |
| Motion for Stay | Estimated 50% Lanham Act | $ | 563.00 |
| Motion for Attorney's Fees | Necessary to Lanham Act | $ | 10,987.00 |
| **Total** | | **$** | **519,701.40** |

## g.   *Case Management*

Besides attorney's fees for specific tasks, Plaintiff requests attorney's fees for various case management tasks performed by attorneys and paralegals.   Exhibit B to the declaration of John D. Fairbrook contains a list of tasks performed by Plaintiff's attorneys.   Exhibit B contains a brief description of the task, the hours utilized, and the person who worked on the task. Plaintiff has provided monthly billing records in support of Exhibit B.   Defendants have responded to these claimed amounts in Exhibit A to the declaration of Todd N. Noonan.

16

Exhibit B does not list specific projects.   Rather, Exhibit B lists categories of tasks for each month.   The categories include, legal research, review and preparation of correspondence and documents, telephone calls and conferences, and summary.   Defendants contend none of these amounts are reasonable, Plaintiff has failed to show that these amounts are not fully captured in other fees, and these amounts have not been divided between claims.   Plaintiff does not respond specifically to Defendants' contentions regarding the fees associated with case management found Exhibit B.

There are several problems with awarding the fees claimed in Exhibit B.   Defendants have not divided up the fees into specific projects.   Rather, Plaintiff has summarized tasks by month.   Plaintiff indicates that write offs were taken in most months, but it is unclear what tasks were written off.    In general, the court finds the total amount claimed for the tasks in Exhibit B excessive.   Because the documentation for Exhibit B is difficult to analyze, the court struggled to determine reasonable attorney's fees for the tasks represented by Exhibit B.   Where the documentation is inadequate, the district court is free to reduce an applicant's fee award accordingly.   Hensley, 461 U.S. at 437; Trustees of Directors Guild of America-Producer Pension Benefits Plans v. Tise, 234 F.3d 415, 427 (9th Cir. 2000).   The court should not "award attorneys' fees unless the prevailing party presents sufficiently detailed records that the time expended and the need for services are clearly established".   White v. City of Richmond, 713 F.2d 458, 461 (9th Cir. 1983).   Although the court finds it must reduce the attorney's fees found in Exhibit B based on the excessive hours claimed and inadequacies in explaining why the fees were required, the court finds it would be an abuse of discretion to follow Defendants' suggestion and preclude recovery for all entries in Exhibit B.

In general, Plaintiff should be compensated for reasonable attorney time taken in making phone calls and in meetings.   However, Plaintiff has combined this time with travel time.   As discussed above, Plaintiff has not shown that travel time should be compensated because it is generally billed to clients at full rates in the relevant legal community.   Because the court does

not know where Plaintiff's attorneys traveled to, the court declines to award all the time requested for phone calls and meetings that have been combined with travel time.    In addition, some of the time requested for phone calls and meetings is excessive and appears to have been partially written off.    The court finds that an average of $400.00 a month for the 37 months this action was pending sufficient to compensate Plaintiff's attorneys for telephone calls and meetings.    The court finds $14,800.00 adequate compensation for phone calls and meetings.

Plaintiff asks for time for legal research and preparing pleadings.    Plaintiff is being compensated for legal research and pleading preparation in Subsection (f) above.    The court does recognize that a reasonable attorney may have done some minimal legal research that was not done for a particular task or motion to understand the background of the law at issue in this action.    However, the court finds the legal research hours claimed in this section excessive and the court has cut the hours accordingly.    The court believes that $5,000.00 is a reasonable expense for background legal research on the Lanham Act claims not already compensated for as legal research done on specific tasks and motions.

Plaintiff asks for time preparing correspondence and documents.    While at times the hours claimed are excessive, the court finds that preparing correspondence and discovery documents is a legitimate expense.    Plaintiff has been awarded fees below at an average rate of $800.00 a month for 37 months, for a total of $29,600.00.

Finally, the court declines to award fees for time spent making a "summary" and on case file review.    The court is unclear what "summary" work entails and how this time is not duplicative of other hours claimed.

The court has reviewed the exhibits and briefs and finds the following amounts reasonable for the given tasks.

| Task | Reason for Adjustment | Amount |
| --- | --- | --- |
| Legal Research | Excessive | $    5,000.00 |
| Summary | Unclear | $        0.00 |

| Telephone, Meetings, Travel | Excessive / Lack of Records $14,800 Estimated 50% Lanham Act | $ 7,400.00 |
|---|---|---|
| Review and Prep. Correspondence and Docs. | Excessive / Lack of Records $29,600 Estimated 50% Lanham Act | $ 14,800.00 |
| **Total** | | **$  27,200.00** |

### 3.  Other Attorneys

Plaintiff requests that attorneys fees be awarded to Attorney Donald Glasrud and Attorney Donald Heller for their work on this action.   Defendants contend that these attorneys' services were unnecessary, duplicative, and related only to the non-Lanham Act claims.

### *1.  Donald Glasrud*

Plaintiff seeks $19,079.00 in attorney's fees and $729.88 in costs for Donald Glasrud. Based on Mr. Glasrud's declaration, it appears he is a highly experienced attorney and his hourly rate is reasonable.   However, it is not clear to the court based on the evidence submitted by Plaintiff that Ms. Glasrud was necessary.   Mr. Glasrud's primary work in this action was in consulting and advising Mr. Fairbrook on matters.   District courts may reduce attorney's fees if the court finds that they are duplicative or unreasonable.  Childress v. Darby Lumber, Inc., 357 F.3d 1000, 1010 (9th Cir. 2004); Sorenson v. Mink, 239 F.3d 1140, 1146 (9th Cir.2001).  After reviewing the records, the court may adjust the hours downward if it believes the documentation to be inadequate, if it finds that the hours are duplicative, or if it finds that the hours are excessive or unnecessary. Copeland v. Marshall, 641 F.2d 880, 891 n.18 (1980).   Based on the documentation provided to the court, the court finds that Mr. Glasrud's hours on this action are duplicative of Plaintiff's other attorneys.   Given Mr. Fairbrook's experience and hourly rate, the court does not find that consultations with Mr. Glasrud regarding this case were necessary.

Mr. Glasrud states that he advised Plaintiff's attorneys on matters relative to federal practice in the Eastern District of California.   The court recognizes that Mr. Glasrud may be more familiar with the practices of the Fresno Division of the Eastern District of California than

Plaintiff's other attorneys.   However, Plaintiff's attorneys are from Sacramento, which also lies

in the Eastern District of California, albeit the Sacramento Division.   The court does not find

that the practices of the Fresno and Sacramento Divisions are so distinct that local counsel was

necessary to assist Plaintiff's attorneys in understanding how this court conducts litigation.

Mr. Glasrud states that he participated in court conferences and assisted in defending

against a motion to dismiss.   The court has already compensated Plaintiff for time spent in

conferences and defending motions.    The court finds the amounts given above concerning the

motions to dismiss adequate compensation.   Plaintiff's attorneys are directed to decide among

themselves what portion of the amounts allocated above should be given to Mr. Glasrud.

Finally, Mr. Glasrud and his firm prepared an ex parte motion shortening time.   Because

Mr. Glasrud and his firm filed the relevant papers, the court will award Mr. Glasrud attorney's

fees for his time concerning the ex parte application.    Unfortunately, Mr. Glasrud has not listed

time spent on specific tasks.    However, a review of Mr. Glasrud's billing records indicates the ex

parte application reflects Mr. Glasrud's and his firm's work in part of July 2002.   During this

time, Mr. Glasrud's records indicate that approximately $4,767.00 was spent on the ex parte

application.   Any error in the court's calculation of $4,767.00 being attributed to the ex parte

application is assigned to Plaintiff's failure to adequately support its request for attorney's fees

for Mr. Glasrud.

As discussed above, in general, the court has reduced claimed fees by 50% to represent

the time spent on the breach of fiduciary duty claim.   The court finds reducing the time spent on

the ex parte application by 50% appropriate.   Accordingly, the court will award Mr. Glasrud

$2,383.50 in attorney's fees.

**_2.  Donald Heller_**

Plaintiff requests $14,484 in fees and $234.25 in costs for Mr. Heller.   Mr. Heller was

obtained to advice Plaintiff's counsel concerning the issues raised by Diana Urban's invocation

of her Fifth Amendment privilege against self-incrimination.   Defendants object to this request

because this claim was not related to the Lanham Act claims and Mr. Fairbrook and Mr. Ribman also worked on the Fifth Amendment issue.

Mr. Heller requests $340.00 an hour and claims that this rate is reasonable and customary for attorneys in white collar criminal matters.   Plaintiff provides no evidence to support this hourly rate other than Mr. Heller's declaration.   The court finds that Mr. Heller should receive no more than $275.00 an hour, the maximum claimed by Plaintiff's other attorneys.

Mr. Heller states that he analyzed legal issues, reviewed documents, deposition testimony and correspondence, met and consulted with Mr. Fairbrook and others, and prepared for and attended the deposition of Dianna Urban.   Because Ms. Urban's deposition raised contested issues of Ms. Urban's constitutional rights, the court finds that requesting a criminal attorney to consult on these matters was reasonable.   Unfortunately, Mr. Heller does not break down the 42.6 hours he claims on this case into specific tasks.   Given the fact Mr. Heller did not break down his hours, the court finds 32 hours for Mr. Heller's participation reasonable.

As discussed above, the court finds that 50% of the time spent on Ms. Urban's testimony should be apportioned to the Lanham Act claim.   The court finds a total of $8,800.00 in attorney's fees and $234.24 in expenses, for a total of $9,034.24 reasonable for Mr. Heller.   Of this, Plaintiff will be awarded $4,517.12 in attorney's fees for Mr. Heller's work on the Lanham Act claims.

**B. EXPENSES**

Plaintiff asks for expenses in addition to the attorney's fees discussed above and the cost bill submitted to the Clerk of the Court.[3]   Defendants request the court not award costs other than those allowed as part of a cost bill pursuant to 28 U.S.C. § 1920.

---

[3] The court has not addressed the cost bill submitted to the Clerk of the Court in this order.  After receiving a cost bill and any objections, the Clerk of the Court, not the undersigned, taxes costs pursuant to Local Rule 54-292 (d).   At this time, the Clerk of the Court has not yet taxed costs, and there is no motion regarding costs pending before the undersigned.

Plaintiff contends that these additional expenses are not costs but should be awarded as attorney's fees.   In general, fees claimed for costs and expenses that are customarily billed by private attorneys to fee-paying clients may be awarded as attorney's fees.   Davis v. City & County of San Francisco, 976 F.2d at 1546 n.4 & 1557 (9th Cir. 1992);   United Steelworkers v. Phelps Dodge Corp., 896 F.2d 403, 407 (9th Cir. 1990); see also  LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir.1998).   Reasonable attorney's fees should include reasonable expenses because attorney's fees and expenses are inseparably intertwined as equally vital components of the costs of litigation.   Davis v. Mason County,  927 F.2d 1473, 1488 (9th Cir. 1991).   At least one district court has held that other out-of-pocket expenses incurred during a Lanham Act lawsuit may be reimbursed as part of an attorney fee award if the expenses are not absorbed as part of a law firm overhead but are normally billed to a private client, and the expenses are reasonable.   United Phosphorus, Ltd. v. Midland Fumigant, Inc.,  21 F.Supp.2d 1255, 1262  (D.Kan.1998), rev'd on other grounds, 205 F.3d 1219 (10th Cir.2000).  Based on this authority, the court finds that Plaintiff is entitled to expenses that are normally billed to fee-paying clients.

Plaintiff requests costs that were incurred incident to its attorneys' provision of services. Plaintiff provide the declaration of Yvonne Moore, who is responsible for supervising the accounting staff and overseeing all financial aspects of billing clients in Plaintiff's attorneys' law firm.   Ms. Moore provides evidence that Plaintiff B&H has been billed for additional expenses that "are regularly billed to our clients."   The court finds that Ms. Moore's declaration sufficiently establishes that Plaintiff incurred these expenses.

At issue in awarding the expenses listed in Ms. Moore's declaration is that Plaintiff provides no argument or evidence that these costs and expenses are customarily billed by private attorneys to fee-paying clients.   The fee applicant bears the burden of submitting evidence supporting the fee award. Fischer v. SJB P.D. Inc., 214 F.3d 1115, 1121 (9th Cir. 2000).   For example, the Ninth Circuit has remanded to the district court to determine if compensation for

expenses such as a filing cabinet and pizza are expenses that would ordinarily be treated as reimbursable in a private attorney-client relationship.  See Davis v. City and County of San Francisco, 976 F.2d at 1557.   However, it does not appear that a moving party is always required to submit evidence that an expense is regularly billed to fee-paying clients.  For example, the Ninth Circuit has stated that attorney's fee awards can include typical reimbursement for out-of-pocket expenses such as travel, courier and copying costs, without discussing the need for the district court to be given evidence that these expenses are typically billed to fee-paying clients.  See  Davis v. City and County of San Francisco,  976 F.2d at 1556;  Davis v. Mason County, 927 F.2d 1473, 1487-88 (9th Cir. 1991).   Keeping in mind that the burden is on Plaintiff to prove that their fee request is reasonable but also keeping in mind that the Ninth Circuit has approved some expenses without evidence that the fee is ordinarily passed on to a fee-paying client, the court turns to Plaintiff's specific requests for expenses.

## *1.  Service Fees*

Plaintiff requests $3,681.46 in additional service fees.   Defendants object to these fees as unnecessary.   Fees for service normally can be included in a prevailing party's cost bill.  See 28 U.S.C. § 1920(a); Local Rule 54-292(f)(2).   Plaintiff has not shown why $3,681.46 in service fees was required above the amount already allowed for as part of Plaintiff's cost bill.   It is unclear why many of the documents served could not have been served through the mail.   The court finds the additional attorney's fees claimed as expenses for service are not reasonable, and they will not be awarded.

## *2.  Federal Expresses Charges*

Plaintiff requests $1,912.00 in federal express charges.   On numerous occasions Plaintiff utilized express delivery services.   Again, it is unclear why Plaintiff did not utilize less expensive methods to serve and deliver documents.   Many of the express packages were directed to clients, witnesses, and the court.   It is unclear if waiting for the last minute to file and serve documents required service by a more expensive means.  Plaintiff's attorneys are responsible for

delays that made it impossible to use cheaper methods to send documents.

However, the court does recognize that postage is an expense typically billed to fee paying clients.  See  Davis v. City and County of San Francisco,  976 F.2d at 1556.  As such, in the court's discretion, the court finds $1,000.00 for postage reasonable.

### *3.  Runner Mileage*

Plaintiff requests $876.08 for runner mileage.   It appears this mileage is for deliveries made to court.   It is unclear why Plaintiff did not utilize less expensive methods to file and deliver documents to court.   It is unclear if waiting for the last minute to file documents required the use of a runner instead of regular mail.   Plaintiff's attorneys are responsible for not using cheaper methods to send documents.   Thus, no mileage will be awarded for runners.

### *4.  Attorney Mileage*

Plaintiff requests $1,851.15 for attorney mileage prior to trial and $2,149.20 for attorney mileage and parking during trial.   Defendants object to awarding mileage.   Defendants contend that Plaintiff should have to bear the expense of Plaintiff's decision to retain out of town counsel.   Reasonable travel expenses have been awarded as an expense typically billed to fee-paying clients.  See  Davis v. City and County of San Francisco,  976 F.2d at 1556.   The court does not find the travel expenses claimed for mileage and parking  unreasonable.   No matter where counsel in this action was located, travel would have been required because most witnesses were located in Modesto, but the courthouse sits in Fresno.   The millage and parking expenses are not so excessive as to be unreasonable, and they will be awarded.

### *5.  Lodging and Meals During Trial*

Plaintiff requests $13,351.36 for lodging during trial and $2,207.32 for meals during trial. Here, the court finds that Plaintiff has failed to meet its burden of showing that this is a fee that is ordinarily treated as reimbursable in a private attorney-client relationship.   While it appears Plaintiff's request for lodging is based on actual costs, meals are requested at a per diem rate.   In this court's experience, clients make differing arraignments regarding lodging and meals for

counsel when they are out of town, including a flat fee, a per diem, actual costs, or a reduced daily rate, which takes into account that at home an attorney has some living expenses.   In addition, different clients would have different views on paying for a hotel office during trial along with two hotel rooms, different views on which nights an attorney should be allowed to spend the night, and different views on how many attorneys should have attended trial.   Plaintiff has given the court no evidence on what lawyers in the community charge clients concerning lodging and meals during trial.  Plaintiffs have the burden to provide the court with evidence to support their fee request.  See Fischer, 214 F.3d at 1121.

However, courts throughout the country routinely allow hotel costs as part of attorney's fees if they are reasonable and not abusive.  See In re San Juan Dupont Plaza Hotel Fire Litigation, 111 F.3d 220, 238 (1st Cir. 1997); Etna Products Co., Inc. v. Q Marketing Group, Ltd., 2005 WL 2254465, 7 (S.D.N.Y. 2005); Stickle v. Heublein, Inc., 590 F.Supp. 630, 633, 640-41 (W.D. Wis. 1984); North Carolina Nat. Bank v. U.S., 1978 WL 4549, 4 (W.D.N.C. 1978).   The fact that prevailing plaintiffs could have employed local counsel does not preclude them from recovering reasonable hotel and travel expenses associated with employing out-of-town counsel.  Yamanouchi Pharmaceutical Co., Ltd. v. Danbury Pharmacal, Inc., 51 F.Supp.2d 302, 307 (S.D.N.Y. 1999).   Thus, the court finds it would be an abuse of discretion to not allow any expenses for Plaintiff's attorney's hotel and meals.

This court is not comfortable guessing as to what is a reasonable hotel and meal request.  Some courts have limited meal and hotel expenses to the United States Government per diem rate.  In re Horizon/CMS Healthcare Corp. Securities Litigation, 3 F.Supp.2d 1208, 1212 (D.N.M. 1999).  The court finds this would be a fair award of hotel and meal expenses in this case.  Pursuant to the United States General Service Administration web cite, the per diem rate for travel to Fresno in 2004 was $108.00 a day.   See  http://www.gsa.gov.   The court finds $108.00 for 32 nights for John Fairbrook and 23 nights for Elana Ribman reasonable.   Thus, the court will award $3,456.00 for Mr. Fairbrook's hotel and meal expenses and $2,484.00 for Ms.

1  Ribman's hotel and meal expenses, for a total of $5,940.00 in hotel and meal expenses.

2  **_6. Westlaw / Lexis Research_**

3  Plaintiff requests $41,509.59 for Westlaw and Lexis research.  Defendants object

4  because Plaintiff fails to offer any documentation to show how these expenditures were

5  calculated.  Plaintiff states that Plaintiff's attorneys paid a flat monthly fee to Westlaw to

6  research certain libraries.  Plaintiff's attorneys then reached an agreement with Plaintiff to

7  charge a flat fee for Westlaw research in the amount of $1,000.00 a month even though

8  Plaintiff's attorney's actual cost for searches would have exceeded this amount.

9  Courts appear split over how to award the costs for computer research such as Lexis and

10 Westlaw.  See In re Media Vision Technology Securities Litigation, 913 F.Supp. 1362, 1370

11 (N.D.Cal.1996).  Some courts have disallowed requests for computer research costs because

12 computer research is merely a substitute for an attorney's time that is compensable under an

13 application for attorney's fees and because law firms do not charge clients for books.  United

14 States v. Merritt Meridian Constr. Co., 95 F.3d 153, 172 (2d Cir.1996); McDermott v. Town of

15 Windham,  221 F.Supp.2d 32, 35 (D. Me. 2002); BD v. DeBuono,  177 F.Supp.2d 201, 209

16 (S.D.N.Y 2001).  Other courts have reasoned that computer research fees in theory reduce the

17 number of attorney hours otherwise needed for more time consuming manual research and they

18 should be compensable if reasonable and related to the tasks performed in the action.  Inc. v.

19 McGraw-Hill Companies, Ltd., 369 F.3d 16, 23 (1st Cir. 2004); Case v. Unified School Dist. No.

20 233, Johnson County, Kan, 157 F.3d 1243, 1258 (10th Cir. 1998);  Haroco, Inc. v. American Nat'l

21 Bank and Trust Co. of Chicago, 38 F.3d 1429, 1440-1441 (7th Cir.1994); Lane v. Piper Jaffray

22 Companies,  2005 WL 1229388, *10 (E.D.Wis. 2005); Oklahoma Natural Gas Co. v. Apache

23 Corp.,  355 F.Supp.2d 1246, 1260 (N.D. Okla. 2004); Angevine v. WaterSaver Faucet Co., No.

24 02 C 8114, 2003 WL 23019165, *8-9 (N.D.Ill. 2003);  Griffeth v. Sheet Metal Workers' Local

25 Unions and Councils Pension Plan,  34 F.Supp.2d 1170, 1176 (D. Ariz. 1998);  Aloha Tower

26 Assocs. Piers 7, 8, and 9 v. Millennium Aloha, 938 F.Supp. 646, 650 (D.Haw. 1996).   There

27

28                                                        26

appears to be no Ninth Circuit case relevant to this issue.   The courts that have allowed expenses for such research have done so on the premise that computerized research reduces the number of attorney hours spent on the case.    Thus, if the number of attorney hours is already high and there is no evidence supporting the conclusion that computerized research reduced the number of attorney hours on a case, courts have disallowed computer research expenses as attorney's fees. Frevach Land Co. v. Multnomah County, Dept. of Environmental Services, Land Use Planning Div., 2001 WL 34039133, *34 (D.Or. 2001).

The court sees no difference between a situation where an attorney researches manually and bills only the time spent and a situation where the attorney does the research on a computer and bills for both the time spent and the computer fee.   However, Westlaw and Lexis charges cannot always be considered an exact substitute for an attorney's time.   Some part of Westlaw's and Lexis's charges must be considered overhead, if for no other reason than law firms normally do not charge clients for law books.  See Cairns v. Franklin Mint Co., 115 F.Supp.2d 1185, 1189 (C.D. Cal. 2000).   Thus, the court will award some attorney's fees for Westlaw and Lexis expenses.

Here, Plaintiff has not provided the court with documents showing how much Westlaw or Lexis charged Plaintiff's attorneys for the Westlaw and Lexis research Plaintiff's attorney's did. Plaintiff's attorneys pay a flat rate to Westlaw.   Plaintiff's attorneys fail to explain how they decided $1,000.00 a month for Plaintiff's research was reasonable.   There is no indication of what Plaintiff's attorneys' law firm's flat rate is and/or what percentage of Plaintiff's attorneys' law firm's  research on Westlaw during the relevant time frame was related to Plaintiff's case. There is no evidence on how attorney's in the legal community charge for Westlaw and Lexis use.   In this court's experience, some consider it an overhead covered by an attorney's hourly rate, some charge a flat fee, some pass along the exact amount they are charged for particular searches, and others charge for Westlaw and Lexis services at the law firm's individual rates. Westlaw and Lexis do not advertise the rates they charge law firms.  The rates paid by specific

law firms are a result of independent negotiations with Westlaw and Lexis and are a product of a law firm size, prior usage, database coverage, and other factors.

The court is justified in denying compensation or reducing compensation where the affidavits and time records for computerized research fail to differentiate adequately between the costs attributable to billable and non-billable items.  Case v. Unified School Dist. No. 233, Johnson County, Kan, 157 F.3d 1243, 1258 (10th Cir. 1998).  In this case, the court finds, in its discretion, that Plaintiff should be reimbursed for some Westlaw and Lexis research expenses.  Clearly some computerized research is reasonable, especially in case like this one that included difficult legal questions.   However, Plaintiff gives only a dollar figure to represent Westlaw and Lexis costs.   This dollar figure is not linked to any particular search, kind of search, or hours spent.   The court is left to guess how much Westlaw and Lexis were actually utilized by Plaintiff's attorneys.  Given the lack of documentation and lack of evidence of practices in the legal community, the court finds $18,500.00 for computerized legal research reasonable.   This allows for an average of $500 a month for each of the 37 months during which this case was pending.

### 7.  Administrative Fee

Plaintiff requests $52,734.34 in an administrative fee.  Plaintiff states that Plaintiff's attorneys charge 4% of the monthly bill in an administrative fee.   The administrative fee covers items such as "postage, fax charges, long distance telephone expenses, and related firm expenses not itemized to the client."   Defendants object to this administrative fee.

The court declines to award the administrative fee.   Plaintiff has failed to correlate this amount to actual expenses.    Plaintiff has failed to provide evidence that this is an expense normally billed to clients in this legal community.   This court is similarly unfamiliar with such a fee.   In addition, some of the expenses covered by this fee have already been accounted for.  For example, the court has awarded postage expenses above.   Fax charges, telephone expenses, and other firm related expenditures should be covered by Plaintiff's attorneys' hourly rates.

Thus, the court declines to award any attorney's fees as an administrative fee.

### 8. Total Expenses

Besides the fees awarded above for Plaintiff's attorneys' time, the court awards the following expenses because they are the type generally passed onto fee-paying clients.   For the reasons discussed above, the expenses have been reduced by 50% to represent the time spent on the Lanham Act portion of this action.

| Expense | Reason for Adjustment | Amount | |
|---|---|---|---|
| Service | Taxable / No Evidence of Need | $ | 0.00 |
| Federal Express / Postage | Excessive / No Evidence of Need<br>Estimated 50% Lanham Act ($1,000/ 2) | $ | 500.00 |
| Attorney Mileage Pre-Trial | Estimated 50% Lanham Act<br>($1,851.51/2) | $ | 925.57 |
| Mileage for Runners | No Evidence of Need | $ | 0.00 |
| Westlaw/Lexis Research | Excessive / Lack of Evidence<br>Estimated 50% Lanham Act ($18,500/2) | $ | 9,250.00 |
| Lodging/Meals During Trial | Excessive / Lack of Evidence<br>Estimated 50% Lanham Act ($5,940/2) | $ | 2,970.00 |
| Mileage / Parking During Trial | Estimated 50% Lanham Act<br>($2,149.00/2) | $ | 1,074.60 |
| Administrative Fees | Duplicative / Lack of Evidence | $ | 0.00 |
| **Total Expenses** | | **$** | **14,720.17** |

## C.  EXPERTS

In requesting attorney fees and expenses, Plaintiff also asks that the court award the costs of Plaintiff's experts.   Defendants contend that Plaintiffs are not entitled to recover their expert fees as part of attorney's fees.

Under 15 U.S.C. § 1117, a prevailing plaintiff "shall be entitled ... to recover ... the cost of the action."   The term "costs of the action" allows costs to be awarded in a trademark case that are allowed under 28 U.S.C. § 1920. <u>People for Ethical Treatment of Animals v. Doughney</u>,

263 F.3d 359, 371 (4th Cir. 2001).   In Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437,

439 (1987), the Supreme Court held that, absent explicit statutory or contractual authorization for

the taxation of litigants' expert witnesses as costs, courts are bound by 28 U.S.C. §§ 1821 and

1920 to limit witness fees to the same amount allowed for all witnesses.   Courts construing

Crawford have held that the statutory rate limitation for compensation of experts applies to cases

involving the taxation of costs and to fee-shifting situations where the statute does not expressly

exempt expert fees from the statutory limitation on witness fees generally.   See Agredano v.

Mutual of Omaha Companies, 75 F.3d 541, 543-44 (9th Cir. 1996) (ERISA).   Subsequently, the

Supreme Court held in West Virginia Univ. Hosp., Inc. v. Casey, 499 U.S. 83, 86-88 (1991), that

a court's authority under 42 U.S.C.A. § 1988 to award a prevailing party "a reasonable attorney's

fee as part of the costs" did not include authority to award expert witness fees and absent explicit

statutory authority to the contrary, the reimbursement of expert witness fees is confined to the

limits set forth in other statutes.   Expert witness fees are not a component of attorney fees.   Id. at

88.  Because the Lanham Act confers no authority upon the court to exceed other statutes,

Plaintiff's expert witness fee request is limited to the per diem and incidental expenses

sanctioned by other statutes.

        Plaintiff contends that they should be awarded its expert fees and expenses as attorney's

fees to sanction Defendants for their bad faith and vexatious litigation.   The court has the

inherent power to levy sanctions, including attorneys' fees when a party has acted in "bad faith,

vexatiously, wantonly, or for oppressive reasons." Roadway Express, Inc. v. Piper, 447 U.S. 752,

766 (1980); Rink v. Gomez, 239 F.3d 989, 991 (9th Cir. 2001).  While the court's inherent power

extends to all litigation abuses, the litigant must have "engaged in bad faith or willful

disobedience of a court's order." Chambers v. NASCO, Inc., 501 U.S. 32, 46-47 (1991);  Fink v.

Gomez,  239 F.3d 989, 992-93 (9th Cir. 2001).   Expert witness fees may be awarded if the losing

party has conducted the case in a vexatious or oppressive manner.  Roberts v. S. S. Kyriakoula D.

Lemos,  651 F.2d 201, 205 (3rd Cir. 1981); Kinnear-Weed Corp. v. Humble Oil & Refining Co.,

441 F.2d 631, 637 (5th Cir. 1971).

In this case, the court does not find that Defendants engaged in bad faith in the way Defendants choose to litigate this action.    The court does not find Defendants' litigation tactics were vexatious or oppressive.    To the extent Defendants filed motions and discovery requests that required work by Plaintiff's attorneys, Plaintiff's attorneys have been compensated for their time.    To the extent Defendants and Defendants' attorneys committed improper acts during discovery, Plaintiffs have already been compensated through sanction awards entered by Magistrate Judge O'Neill.    The court is well aware of the numerous motions field by all parties in this action.    While some of Defendants' briefs were lengthy and Defendants lost on some arguments, the court cannot find that Defendants' motions and briefs were done in bad faith. Thus, the court declines to award any expert fees as a sanction to Defendants' litigation conduct.

**D.  TOTAL ATTORNEY'S FEES**

The court finds that the lodestar figure for a reasonable attorney fee in this case is as follows:

| | | | |
|---|---|---|---|
| **Specific Tasks** | | | **$  519,701.40** |
| **Administrative Tasks** | | | **$    27,200.00** |
| **Other Attorneys** | Mr. Glasrud- | $2,383.50 | |
| | Mr. Heller - | $4,517.12 | **$      6,900.62** |
| **Expenses** | | | **$    14,720.17** |
| **Total** | | | **$  568,522.19** |

Pursuant to Section § 1117(a), the court finds $568,522.19 a reasonable award of attorney's fees based on the lodestar figure and expenses that are normally charged to private paying clients.

**E.  MULTIPLIER**

The court recognizes that a district court in calculating attorney's fees may adjust the

lodestar figure based upon the factors listed in <u>Kerr v. Screen Extras Guild, Inc.</u>, 526 F.2d 67, 69-70 (9th Cir.1975).  <u>Cairns</u>, 292 F.3d at 1158.    The original <u>Kerr</u> factors are as follows:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

<u>Kerr v. Screen Extras Guild, Inc.</u>, 526 F.2d 67, 70 (9th Cir.  1975).  The Supreme Court subsequently deemed the fixed or contingent nature of the fee irrelevant to the fee calculation, thus factor number 6 above is no longer considered.   <u>City of Burlington .v Dague</u>, 505 U.S. (1992).   The <u>Kerr</u> factors which are subsumed in the initial lodestar calculation should generally not be considered in determining whether to deviate from the lodestar figure.  <u>Blum v. Stenson</u>, 465 U.S. 886, 898-900 (1984).   The <u>Kerr</u> factors subsumed in the initial lodestar calculation are the novelty and complexity of the issues, the special skill and experience of counsel, the quality of the representation, the results obtained and the superior performance of counsel.  <u>Blum</u>, 465 U.S. at 898-900.    The court need not consider all of the <u>Kerr</u> factors, and only should address those called into question by the case at hand and necessary to support the reasonableness of the fee award.  <u>Cairns</u>, 292 F.3d at 1158.

Here, Plaintiff does not ask the court for a multiplier.   It is unclear if Defendants request a multiplier.   It appears Defendants may be requesting a negative multiplier based on the results obtained.   Defendants point out that Plaintiff was seeking at least $5 million dollars, plus punitive and trebling damages, and attorney's fees and costs.   Plaintiff only received a jury award of $851,500.00.   Plaintiff has asked for a total of $1,407,584.50 in attorney's fees, 1.6 times the amount of the jury's award.

In <u>Farrar v. Hobby</u>, 506 U.S. 103 (1992), the Supreme Court stated that "[i]t is an abuse of discretion for the district court to award attorneys' fees without considering the relationship

between the 'extent of success' and the amount of the fee award." Id. at 115-16; McGinnis v. Kentucky Fried Chicken of California, 51 F.3d 805, 810 (9th Cir.1994).   The Farrar exception, which would allow the court to dispense with the calculation of a lodestar and simply establish a low fee or no fee at all, is generally limited to cases in which a civil rights plaintiff "prevailed" but received only nominal damages and achieved only "technical" success.   Morales v. City of San Rafael, 96 F.3d 359, 362-63 (9th Cir 1997).   Because Plaintiff's damage award, while substantially less than what Plaintiff sought, was not nominal, and because this was not a civil rights case, the court finds a reduction in the attorney's fee award pursuant to Farrar is not appropriate in this action.

The court does recognize that Plaintiff received substantially less then the total damage award of approximately $15 million sought by Plaintiff.   However, the court finds that this is not a reason to reduce the attorney's fee award.   A low damage award, should not, in itself, be viewed as a "limited success."   Davis v. Southeastern Pennsylvania Transp. Authority, 924 F.2d 51, 55 (3d Cir 1991); see also Cowan v. Prudential Ins. Co. of America, 935 F.2d 522, 526 (2d Cir. 1991).    And, an attorney's fee award is not unreasonable even if it is considerably larger than the compensatory damage award.   Cange v. Stotler and Co., 913 F.2d 1204, 1211 (7th Cir 1990).   Here, the court has already reduced Plaintiff's claimed attorney's fees to make them reasonable.   The total attorney's fees in this action, as found in Section D, is $568,522.19.   This award is lower than the jury's verdict of $851,500.00.   Considering the nature of this litigation, the court does not find $568,522.19 in attorney's fees excessive in light of the success Plaintiff obtained at trial.   Thus, the court declines to use a downward multiplier to reduce the attorney's fees in this action.

## F.  RULE 68 OFFER

Defendants contend that the court should not include in any award of attorney's fees any fees that occurred after Defendants made their Rule 68 offer.   Plaintiffs contend the court should

not reduce the attorney's fees because the judgement Plaintiff obtained after trial was more favorable than the Rule 68 offer.

Rule 68 provides:

> At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued. . . . An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer. The fact that an offer is made but not accepted does not preclude a subsequent offer. . . .

District courts have wide discretion in refusing to award post-offer fees where an offer of judgment exceeds the plaintiff's ultimate recovery.    In Haworth v. State of Nevada, 56 F.3d 1048 (9th Cir.1995), the Ninth Circuit considered attorney's fees incurred after an offer of judgment was made in an action that did not define attorney's fees as part of costs. Id.at 1051. The Ninth Circuit noted that the district court properly concluded that Rule 68 did not necessarily bar the plaintiffs from recovering reasonable attorney's fees incurred after the Rule 68 offer.  Id. However, the Ninth Circuit held that the court must consider the results obtained by the plaintiff after he rejects a Rule 68 offer in determining the reasonableness of any fee award: "We . . . hold that . . . when a Rule 68 offer of judgment has been rejected, and judgment is obtained for less than the settlement offer, these circumstances must be considered by the district court in determining what fee is reasonable." Id. at 1052. The court stated:

> When a plaintiff rejects a Rule 68 offer, the reasonableness of an attorney fee award under the FLSA will depend, at least in part, on the district court's consideration of the results the plaintiff obtained by going to trial compared to the Rule 68 offer. This application of Rule 68 has the salutary benefit of encouraging settlement of cases that should be settled when reasonable settlement offers are made.
>  . . . .
> In determining what fee is reasonable [under the] circumstance[s], the district court must take into consideration the amount of the Rule 68 offer, the stage of the litigation at which the offer was made, what services were rendered thereafter, the amount obtained by judgment, and whether it was reasonable to continue litigating the case after the Rule 68 offer was made.

34

1   Id. at 1052-53.   The Ninth Circuit was especially critical of the plaintiffs in Haworth because it

2   appeared to the court that the "the only one who benefitted by pursuing the litigation after the

3   Rule 68 offer was made was the plaintiffs' attorney." Id. at 1052.  The court stated very clearly

4   that "[j]ust because a plaintiff has [a statutory] violation in her pocket does not give her a license

5   to go to trial, run up the attorney fees and then recover them from the defendant." Id.

6        In their March 26, 2004 Rule 68 settlement offer, Defendants offered the following:

7        (1) Payment of $1 million;

8        (2) Transfer of ownership of those marks registered by Bright Tecnologías in Mexico.

9        (3) Settlement of all litigation in Mexico regarding the marks;

10       (4) Transfer of Defendant Bright's shares in ByH Mexico to Plaintiff, which would
         provide B&H with ownership and control over ByH Mexico;

11
         (5) Settlement of all claims arising out of Bright's taking of ownership and control of
12       ByH Mexico;

13       (6) A permanent injunction relating to the trademarks.

14  Defendants' Evidence, Exhibit A.

15       In this action, the court cannot ascertain if the Rule 68 offer was more than the judgment

16  obtained after trial.   At trial, Plaintiff received $851,500.00, an injunction, and the attorney's

17  fees that will be awarded by this order.   The Rule 68 offer included $1 million, an injunction, the

18  return of ByH Mexico, transfer of the Mexican trademarks, and settlement of claims arising from

19  Defendant Bright taking control of ByH Mexico and registration of the trademarks in Mexico.

20  Based on the evidence before the court, the court cannot find by a preponderance of the evidence

21  that the Rule 68 offer was more than the judgment obtained for several reasons.

22       First, the Rule 68 offer did not include attorney's fees and costs.  "Where a Rule 68 offer

23  explicitly states that it is inclusive of prejudgment interest and pre-offer costs and attorneys' fees,

24  the judgment to which the offer is compared must include these items if they are awarded."

25  Champion Produce, Inc. v. Ruby Robinson Co., Inc., 342 F.3d 1016, 1020 (9th Cir. 2003).   Only

26  pre-offer costs and attorneys' fees are included for purposes of comparison, because post-offer

27

28                                    35

costs and fees "merely offset part of the expense of continuing the litigation to trial, and should [therefore] not be included in the calculus." Marek v. Chesny, 473 U.S. 1, 7 (1985).   The court finds that a minimum of $192,547.75 in attorney's fees was spent prior to the Rule 68 offer. Including these attorney's fees, Plaintiff obtained approximately $1,044,047.75 at trial.   This figure is larger than the $1 million offered.   Because the Rule 68 offer did not include fees and costs, the court cannot find that the value of the $1 million offered was less than the jury's award.

Second, the Rule 68 offer included provisions that were not at issue in this trial and for which the court cannot ascertain a monetary value.   The Rule 68 offer included the return of ByH Mexico and a transfer of the Mexican trademarks.   Both ByH Mexico and the Mexican trademarks had value.   However, there is no undisputed evidence establishing ByH Mexico's value and the trademark's value as of March 26, 2004.   The end to litigation concerning the ownership of ByH Mexico and the Mexican trademarks had value.   The possible damages Plaintiff may have obtained in the litigation concerning the ownership of ByH Mexico and the Mexican trademarks had value.

The court suspects that $1 million dollars, the return of ByH Mexico, the transfer of the Mexican trademarks, and the end to litigation regarding the acquisition of  ByH Mexico and the trademarks may well have exceeded the jury's verdict in this action, the attorney's fees as of March 26, 2004, and potential other damage awards in the other lawsuits concerning ByH Mexico and the Mexican trademarks.   However, this statement is based on speculation by the court and not clear evidence.   To determine the value of those items not at issue in this action the court would need to, essentially, have another trial about the value of ByH Mexico, the Mexican trademarks, and the other litigation.   The Supreme Court has cautioned that a request for attorney's fees should not result in a second major litigation.   Hensley, 461 U.S. at 437. Because there is insufficient evidence before the court from which the court can find that the Rule 68 offer was of more value than what Plaintiff obtained at trial, the court will not reduce the attorney's fees set forth in Section D.

1    In addressing the Rule 68 offer, the court must note that Plaintiff did not bother to

2    respond to Defendants' Rule 68 offer.   The court strenuously encouraged the parties to settle this

3    case.   Magistrate Judge O'Neill was willing to expend considerable time working with the

4    parties to reach a settlement.   At the end of this litigation, Plaintiff received something very

5    similar to what Defendants offered, even if the issues concerning ByH Mexico and the Mexican

6    trademarks are not considered.   If Plaintiff was concerned Defendants' offer did not include

7    expenses and attorney's fees, Plaintiff could have given a counteroffer.   If Plaintiff was

8    concerned that the Rule 68 offer included too many items that were not at issue in this litigation,

9    Plaintiff could have asked Defendants for an offer that did not take into account ByH Mexico's

10   ownership and the Mexican trademarks.   Instead, Plaintiff did nothing.

11   In granting the attorney's fees and expenses found in Subsection D, the court took

12   considerable time to reach an amount that was fair and reasonable in relation to the necessary

13   tasks involved and the parties' and the attorney's conduct throughout this litigation.   Had the

14   court not so carefully reviewed the tasks and expenses and reduced Plaintiff's claimed requests

15   so substantially, the court might be inclined to use a downward multiplier based on Plaintiff's

16   failure to make any effort to settle this case after receiving what can only be described as a good

17   faith Rule 68 offer.   The court would have based the adjustment on the Rule 68 offer and the

18   Kerr factors.   However, the court finds that $568,522.19 is a reasonable award of attorney's fees

19   based on the evidence before the court, the parties' conduct in this action, and the additional

20   factors the court may take into account when adjusting a lodestar amount.   Thus, the court will

21   not reduce the  $568,522.19 in attorney's fees based on the Rule 68 offer or Plaintiff's conduct

22   surrounding the Rule 68 offer.

23                              **CONCLUSION AND ORDER**

24   Based on the above memorandum opinion, the court finds that Plaintiff's attorneys are

25   entitled to $519,701.40 for the specific tasks listed in Exhibit A to the declaration of John D.

26   Fairbrook.   The court finds Plaintiff's attorneys are entitled to $27,200.00 for administrative

27

28                                        37

tasks.    The court finds Mr. Glasrud is entitled to $2,383.50 for his work on this action, and Mr. Heller is entitled to $4,517.12 for his work on this action.    The court finds that Plaintiff's attorneys are entitled to $14,720.17 in expenses.    In total, the court finds that Plaintiff is entitled to $568,522.19 in attorney's fees.    In light of the fact this amount is reasonable considering all parties' actions in this case, the court does not find that a multiplier is warranted based on the Kerr factors or the Rule 68 offer.

Accordingly, the court ORDERS that:

1.      Plaintiff's motion and supplemental motion for attorney's fees is GRANTED; and

2.      Plaintiff is awarded $568,522.19 in attorney's fees.

IT IS SO ORDERED.

**Dated:    March 3, 2006**                    _____**/s/ Anthony W. Ishii**_____
0m8i78                                                          UNITED STATES DISTRICT JUDGE